UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ACQUIA INC.,<br>    Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | C.A. No. 21-10745-MLW |
| | ) | |
| COMPUSYSTEMS, INC., | ) | |
|     Defendant. | ) | |
| | ) | |
| | ) | |
| | ) | |

MEMORANDUM AND ORDER

WOLF, D.J.                                September 9, 2022

I.   SUMMARY

Plaintiff Acquia, Inc. ("Acquia") brought this action for breach of contract against defendant CompuSystems, Inc. ("CompuSystems") on May 6, 2021. See Complaint (Dkt. No. 1). CompuSystems has moved to dismiss this case for lack for personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). See Dkt. No. 10. In summary, the court finds that Acquia has failed to make a prima facie showing that this court has personal jurisdiction over CompuSystems. Therefore, the court is granting the Motion.

II.  FACTS

Acquia is cloud-based software company incorporated in Delaware with its principal place of business in Boston. See Complaint at ¶¶2, 6. Acquia "provides software products and

services to assist enterprise companies in building and operating websites, apps, and other digital platforms." Id. at ¶6. CompuSystems is an event registration provider incorporated and headquartered in Illinois. See id. at ¶¶3, 7.

On April 16, 2020, CompuSystems and Acquia executed a Subscription and Services Agreement (the "Agreement"), under which CompuSystems purchased a 36-month license for Acquia's cloud services for a fixed fee of $494,090. See id. at ¶8. On August 6, 2020, the parties executed an "add-on order" of additional services to the Agreement for $2,900. See id. at ¶9.

Acquia alleges that, on January 8, 2021, CompuSystems requested early termination from the Agreement, and "[t]hereafter, Acquia and CompuSystems engaged in discussions from which Acquia believed that CompuSystems intended not to honor its remaining payment obligations under the Agreement." Id. at ¶¶12-13. On March 25, 2021, Acquia sent CompuSystems a written request for adequate assurance of performance of the Agreement, and CompuSystems did not respond. See id. at ¶14. On April 27, 2021, CompuSystems "asserted that Acquia was in preexisting breach of the Agreement and made clear that CompuSystems would not pay the remaining amount due to Acquia under the Agreement." Id. Acquia alleges that "[t]o date, $405,752 (plus applicable tax) remains unpaid under the Agreement." Id. at ¶10.

Acquia now brings a claim for breach of contract against CompuSystems, alleging that "CompuSystems has repudiated its obligations to pay Acquia the remaining amounts owed under the Agreement." Id. at ¶19. Acquia seeks damages in the amount of $405,752 plus applicable tax and interest. See id. at 4.

On September 8, 2021, CompuSystems filed a Motion to Dismiss for Lack of Personal Jurisdiction. See Dkt. No. 10; see also Memorandum in Support of Motion to Dismiss (Dkt. No. 11) ("Memo. Mot. Dismiss"). Acquia filed an Opposition to the Motion to Dismiss and requested jurisdictional discovery if the court does not deny the Motion to Dismiss. See Dkt. No. 14 ("Opp.").[1] On June 17, 2022, CompuSystems filed a reply in support of its Motion to Dismiss. See Dkt. No. 23 ("Reply").

III. DISCUSSION

A. Personal Jurisdiction

When the court's personal jurisdiction over a defendant is challenged, the plaintiff bears the burden to establish that jurisdiction exists. See Adams v. Adams, 601 F.3d 1, 4 (1st Cir. 2010). Three methods exist for determining whether the plaintiff has met its burden at the motion to dismiss stage. See Foster-

---

[1] The parties dispute whether the court should accept Acquia's Opposition to the Motion to Dismiss as timely filed. See Dkt. Nos. 17, 20. Because Acquia's Opposition does not change the court's decision to dismiss the case, the court is accepting the Opposition.

Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995).[2] The "prima facie" method is most appropriate in cases in which the parties have not presented conflicting versions of the facts. See Nowak v. Tak How Invs., Ltd., 94 F.3d 708, 712 (1st Cir. 1996). The parties have used the prima facie standard in their submissions. The court finds it appropriate to use it as well.

To make a prima facie showing of jurisdiction, the plaintiff "cannot rest upon the pleadings but is obliged to adduce evidence of specific facts." Foster-Miller, 46 F.3d at 145; Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992) ("[P]laintiffs may not rely on unsupported allegations in their pleadings to make a prima facie showing of personal jurisdiction."). The court must "consider . . . whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." Foster-Miller, 46 F.3d at 145. The court accepts the plaintiff's proffered and properly documented facts as true "irrespective of whether the defendant disputes them, and in so doing, construe[s] them in the light most congenial to the plaintiff's jurisdictional claim." Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007). "Those facts put forward by the defendant

---

[2] The three possibly applicable standards are the "prima facie standard", the "preponderance standard," and the "likelihood standard." See Foster-Miller, 46 F.3d at 145-47.

become part of the mix only to the extent that they are uncontradicted." Id.

The court finds that the evidence plaintiff proffers is not sufficient to make a prima facie showing that it has personal jurisdiction over CompuSystems.

A federal district court may exercise personal jurisdiction over non-resident defendants to the same extent as a state court in the state in which the district court is located. See Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002). Massachusetts courts have personal jurisdiction over non-residents only if jurisdiction comports with Due Process and is permitted by a Massachusetts statute, such as the long-arm statute, Massachusetts General Laws Chapter 223A, §3. See Bulldog Invs. Gen. P'ship v. Sec'y of the Commonwealth, 457 Mass. 210, 215 (2010).

There are two types of personal jurisdiction, specific and general. Each is subject to its own set of statutory and Due Process constraints. Specific jurisdiction is permissible under Massachusetts General Laws Chapter 223A, §3. Among other things, §3 authorizes personal jurisdiction over "a person, who acts directly or by an agent, as to a cause of action . . . arising from the person's . . . transacting any business in [Massachusetts]." For jurisdiction to exist under this provision of the Massachusetts statute, "the facts must satisfy two

requirements -- the defendant must have transacted business in Massachusetts, and the plaintiff's claim must have arisen from the transaction of business by the defendant." Tatro v. Manor Care, Inc., 416 Mass. 763, 769-71 (1994); see also Evans Cabinet Corp. v. Kitchen Int'l, Inc., 593 F.3d 135, 146 (1st Cir. 2010).

The court must "construe the 'transacting any business' language of the statute in a generous manner, and, in applying the clause to the[ ] facts, [ ] must focus on whether the defendant [ ] attempted to participate in the commonwealth's economic life." Cossart v. United Excel Corp., 804 F.3d 13, 18 (1st Cir. 2015) (quoting United Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1087 (1st Cir. 1992)) (internal marks omitted). Whether a claim "arises from" the transacted business depends on "whether the transacted business was a 'but for' cause of the harm alleged in the claim." Id. (citing Tatro v. Manor Care, Inc., 416 Mass. 763, 767 (1995)).

If the requirements of Massachusetts General Laws Chapter 223A, §3 are satisfied, Due Process also requires that defendants have sufficient "minimum contacts" with Massachusetts so that subjecting it to that forum's jurisdiction will not offend the "traditional notions of fair play and substantial justice." United Elec. Workers, 960 F.2d at 1087 (quoting Int'l Shoe Co. v. Washington, 325 U.S. 310, 316 (1945)). A court may only exercise jurisdiction over a defendant whose "conduct and connection with

6

the forum State" are "such that [the defendant] should reasonably anticipate being haled into court there." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980). The First Circuit has held that Due Process requires three elements be satisfied before a court may exercise specific personal jurisdiction:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must, in light of the Gestalt factors, be reasonable.

United Elec. Workers, 960 F.2d at 1089.

"The first inquiry, relatedness, asks whether 'the claim underlying the litigation . . . directly arise[s] out of, or relate[s] to, the defendant's forum-state activities.'" Astro-Med, Inc. v. Nihon Kohden America, Inc., 591 F.3d 1, 9 (1st Cir 2009) (quoting N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25 (1st Cir. 2005)). "[T]here must be more than just an attenuated connection between the contacts and the claim; the defendant's in-state conduct must form an important, or [at least] material, element of proof in the plaintiff's case." Phillips v. Prairie Eye Ctr., 530 F.3d 22, 27 (1st Cir. 2008). This means that the defendant's in-forum conduct must be at least the but-for cause of the plaintiff's injury, and the conduct's connection to the

plaintiff's claim may not be too "attenuated or indirect." <u>Harlow v. Children's Hosp.</u>, 432 F.3d 50, 60-61 (1st Cir. 2005). "The relatedness test is a 'flexible, relaxed standard.'" <u>Id.</u>

The "purposeful availment" requirement "represents a rough quid pro quo: when a defendant deliberately targets its behavior toward the society or economy of a particular forum, the forum should have the power to subject the defendant to judgment regarding that behavior." <u>Carreras v. PMG Collins, LLC</u>, 660 F.3d 549, 555 (1st Cir. 2011). "The cornerstones of this inquiry are voluntariness and foreseeability." <u>C.W. Downer & Co. v. Bioriginal Food & Sci. Corp.</u>, 771 F.3d 59, 66 (1st Cir. 2014). The court must determine whether the defendant "'deliberately' has engaged in significant activities within a state . . . or has created 'continuing obligations' between himself and residents of the forum," such that "he manifestly has availed himself of the privilege of conducting business" in the state and "shielded" himself with the "benefits and protections of the forum's laws." <u>Burger King v. Rudzewicz</u>, 471 U.S. 462, 474-75 (1985). His interactions with in-state residents "must be voluntary and not based on the unilateral actions of another party." <u>Adelson</u>, 510 F.3d at 50; <u>see also</u> <u>World-Wide Volkswagen</u>, 444 U.S. at 298. Moreover, they cannot be so "'[r]andom,' 'fortuitous,' or 'attenuated'" that the defendant could not foresee litigation in the forum. <u>Burger King</u>, 471 U.S. at 475.

8

Finally, even where relatedness and purposeful availment are satisfied, the court may exercise specific personal jurisdiction only if doing so is "reasonable" in light of the First Circuit's "Gestalt factors." See, e.g., Adams, 601 F.3d at 5. These include:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

Nowak, 94 F.3d at 716.

In this case, Acquia has not made a prima facie showing of specific jurisdiction as to CompuSystems because it has not proffered evidence that, if credited, would be sufficient to prove that CompuSystems purposefully availed itself of this forum.[3] None

---

[3] In its Opposition, Acquia does not dispute CompuSystems' assertion that the court does not have general jurisdiction over CompuSystems. In any event, Acquia has not made a prima facie showing that the court has general jurisdiction over CompuSystems. General jurisdiction is permitted under Massachusetts General Laws Chapter 223A, §2 if a corporation is "organized under the laws of, or maintain[s] . . . its principal place of business in, this commonwealth." Similarly, general jurisdiction over a corporation comports with Due Process when the corporation is "at home" in the forum, which almost always requires the corporation to be incorporated in or to have its principal place of business in the forum. See BNSF Ry. Co. v. Tyrrell, 137 S. Ct. 1549, 1558 (2017) (citing Daimler AG v. Bauman, 134 S. Ct. 746, 760 (2014)). In this case, both parties acknowledge that CompuSystems is incorporated and headquartered in Illinois. See Hertz Corp. v. Friend, 130 S. Ct. 1181, 1186-92 (2010) (holding that a company's principal place of business is usually the corporation's headquarters, "provided that the headquarters is the actual center of direction, control, and coordination").

of CompuSystems' alleged contacts with Massachusetts that relate to this dispute targeted "the society or economy" of Massachusetts such that CompuSystems could be said to have "manifestly . . . availed [it]self of the privilege of conducting business" here. Carreras, 660 F.3d at 555; Burger King, 471 U.S. at 474-75.

The Complaint alleges that "the subject contract was executed in [Massachusetts]", Complaint at ¶5, and that plaintiff Acquia's principal place of business is in Boston, Massachusetts, see id. at ¶2; see also Decl. of Stephen Reny (Dkt. No. 15-3) ("Reny Decl.") at ¶4. In its Opposition to the Motion to Dismiss, Acquia also asserts that its Massachusetts-based employees conducted multiple virtual demonstrations of Acquia's products for CompuSystems before the contract was formed. See Opp. (Dkt. No. 14) at 3; Reny Decl. at ¶¶5, 8. Acquia also states that CompuSystems employees exchanged numerous emails with an Acquia employee who "openly displayed Acquia's Massachusetts address in [his] signature block." Opp. at 3; see also Reny Decl. at ¶7; Ex. A, Reny Decl. In addition, Acquia notes that its Massachusetts address was listed on the Agreement documents and six invoices issued to CompuSystems. See Opp. at 3; Reny Decl. at ¶¶9-10, 14; see also Ex. B, Reny Decl. at 1, 7-9; Ex. C, Reny Decl. Acquia also states that it "performed from Massachusetts all obligations required of it under the Agreement, including responding to all

10

technical inquiries from CompuSystems and its consultant." Opp. at 4; see also Reny Decl. at ¶15. Finally, Acquia points out that CompuSystems twice contacted Acquia in Massachusetts in relation to CompuSystems' intent to terminate the contract. See Opp. at 4; Reny Decl. at ¶¶17-18.

These activities are insufficient to establish that CompuSystems purposefully availed itself of the forum and could "reasonably anticipate being haled into court" in Massachusetts. World-Wide Volkswagen, 444 U.S. at 297. In Copia Communications, LLC v. AMResorts, L.P., the First Circuit affirmed dismissal for lack of personal jurisdiction in a case involving a Massachusetts company which contracted to provide internet services to a defendant in Jamaica. 812 F.3d 1, 6 (1st Cir. 2016). In that case, the plaintiff negotiated the contract by "[c]ommunicat[ing] by email with several [defendant employees] and he may have sent or received some of these emails while in Massachusetts . . . [and] the negotiations culminated in a contract, which . . . identifies [plaintiff] as a Massachusetts corporation and lists [plaintiff's] Massachusetts address." Id. at 2-3. In addition, under the contract, plaintiff agreed to "to provide ongoing on-site support and maintenance" to defendant, and plaintiff "sometimes received contract-related phone and email communications in Massachusetts." Id. at 3. The First Circuit held that these contacts were insufficient to create personal jurisdiction, explaining that

11

"[i]n its relevant, i.e., contract-related, dealings with [plaintiff], [defendant] sought no privilege to conduct any activities in Massachusetts and did nothing to invoke the benefits and protections of Massachusetts' laws beyond implicitly relying on the state's laws in the way that any party to a contract relies on the laws of the jurisdiction in which his counter-party happens to reside." Id. at 5.

Similarly, in Phillips v. Prairie Eye Center, the First Circuit found in a contract suit that the defendant's awareness of the plaintiff's location in the forum state and its transmission of contract-related communications with plaintiff in that state were insufficient to establish purposeful availment. 530 F.3d 22, 29 (1st Cir. 2008). The First Circuit explained that "[i]t stretches too far to say that [defendant], by mailing a contract with full terms to Massachusetts for signature and following up with three e-mails concerning the logistics of signing the contract, should have known that it was rendering itself liable to suit in Massachusetts." Id.

Acquia relies primarily on CompuSystems' awareness that it was contracting with a Massachusetts-based company, as evidenced by Acquia's address on the Agreement and invoices,[4] and the fact

---

[4] As CompuSystems notes in its reply, the invoices submitted by Acquia indicate that CompuSystems was directed to remit payment to banks in either California or Texas, not Massachusetts. See Ex. 3 to Decl. of Stephen Reny (Dkt. No. 15-3).

that CompuSystems communicated with Acquia employees in Massachusetts. However, for reasons that the First Circuit explained in Copia and Phillips, these contacts are not sufficient to prove that CompuSystems purposefully availed itself of the benefits and protections of Massachusetts laws. See Copia, 812 F.3d at 6 ("None of this by itself represents the type of purposeful availment of the privilege of conducting business in Massachusetts that would have made it reasonably foreseeable that [defendant] could be 'haled into court' in Massachusetts on its contract with [plaintiff]."); Phillips, 530 F.3d at 29.

Acquia also asserts that it performed all of its obligations in Massachusetts, as evidenced by CompuSystems receipt of technical assistance from Acquia's support personnel in Massachusetts. In Copia, the plaintiff similarly "point[ed] to [defendant's] receipt of equipment shipped by [plaintiff] from Massachusetts as a voluntary contact between the defendants and the forum state." 812 F.3d at 5. However, the First Circuit explained that "[t]he contract does not require shipment from any particular state, and there is no evidence that the defendants cared about the geographic origin of the shipments." Id. Similarly, the Agreement in this case does not specify a location from which Acquia would provide technical support to CompuSystems. See Memo. Mot. Dismiss (Dkt. No. 13) (citing Aff. of Adam Forman (Dkt. No. 11-2) at ¶¶14-16); Reply (Dkt. No. 23) at 9. Therefore, the

13

Agreement created no requirement or expectation that CompuSystems maintain contact with Massachusetts-based employees. Cf. Adelson v. Hananel, 641 F. Supp. 2d 65, 78 (D. Mass. 2009), aff'd, 652 F.3d 75 (1st Cir. 2011) (contract required defendant employee to work for an entity with a Massachusetts office and routinely fax budgets for approval to Massachusetts office).

Accordingly, Acquia has not made a sufficient prima facie showing of specific jurisdiction over CompuSystems to survive the motion to dismiss.

### B. Jurisdictional Discovery

Certain cases may warrant jurisdictional discovery, as Acquia requests if the Motion to Dismiss is not denied. "A diligent plaintiff who sues an out-of-state corporation and who makes out a colorable case for the existence of in personam jurisdiction may . . . be entitled to a modicum of jurisdictional discovery if the corporation interposes a jurisdictional defense." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 625 (1st Cir. 2001). The "diligence" prong "includes the obligation to present facts to the court which show why jurisdiction would be found if discovery were permitted." Id. at 626. The "colorable" standard requires some showing that discovery is needed or likely to be useful. See Dynamic Image Techs., Inc. v. United States, 221 F.3d 34, 38 (1st Cir. 2000). However, "even when the plaintiff has been diligent and has made a colorable claim for personal jurisdiction, the

14

district court still has broad discretion to decide whether discovery is required." <u>Swiss Am. Bank</u>, 274 F.3d at 625-26. Nevertheless, "courts generally will grant jurisdictional discovery if the plaintiff can show that the factual record is at least ambiguous or unclear on the jurisdiction issue." <u>In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proc.</u>, 136 F. Supp. 3d 968, 973 (N.D. Ill. 2015).

Acquia has not presented a colorable claim that the court has jurisdiction over CompuSystems. Therefore, it is not appropriate to permit jurisdictional discovery to develop that claim. <u>See Swiss Am. Bank</u>, 274 F.3d at 625.

Again, the "colorable" standard requires some showing that discovery is needed or likely to be useful. <u>See Dynamic Image Techs.</u>, 221 F.3d at 38. Here, Acquia requests that the court "allow jurisdictional discovery limited to CompuSystems' knowledge of Acquia's place of business and the location of Acquia personnel by allowing a single document request and a deposition of CompuSystems that will permit Acquia to address specific jurisdiction on a more fully developed record." Opp. at 15. However, as explained earlier, the First Circuit has stated that a "defendant's awareness of plaintiff's location in forum state, combined with defendant's occasional transmission of contract-related communications into forum state, [is] insufficient to establish defendant's purposeful availment of forum state." <u>Copia</u>, 812 F.3d at 5 (citing <u>Phillips</u>,

15

530 F.3d at 28-29). Accordingly, additional discovery relating to CompuSystems' knowledge of the location of Acquia's business and personnel would not alter the court's analysis regarding personal jurisdiction. Moreover, CompuSystems has not disputed that it was aware that Acquia's place of business and personnel were located in Massachusetts. The court, therefore, finds that Acquia has not made a colorable claim of personal jurisdiction as to CompuSystems. Accordingly, it is not necessary or appropriate to grant Acquia's request for jurisdictional discovery.

IV. ORDER

In view of the foregoing, it is hereby ORDERED that:

1. Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. No. 10) is ALLOWED.

2. Acquia's request for jurisdictional discovery in its Opposition to the Motion to Dismiss (Dkt. No. 14) is DENIED.

3. This case is DISMISSED.

UNITED STATES DISTRICT JUDGE